IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JANNA HEARLSON,            )
                           )
        Plaintiff,         )
                           )
v.                         )    Case No. CIV-16-472-KEW
                           )
NANCY A. BERRYHILL, Acting )
Commissioner of Social     )
Security Administration,   )
                           )
        Defendant.         )

## OPINION AND ORDER

Plaintiff Janna Hearlson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the ALJ's decision. Claimant completed her high school education as well as some college and technical training. Claimant has worked in the past as a secretary, clerk, customer service representative, home health aide, direct care worker, cafeteria worker, and census taker. Claimant alleges an inability to work beginning March 11, 2011 due to limitations resulting from low back pain, diabetes, obesity,

fibromyalgia, anxiety/depression, and migraine headaches.

**Procedural History**

On December 31, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On October 27, 2014, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On March 11, 2015, the ALJ entered an unfavorable decision. The Appeals Council denied review on June 21, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to

4

perform a proper determination at steps four and five; (2) failing to properly evaluate the medical and non-medical source evidence; and (3) failing to perform a proper credibility analysis.

**Step Four and Five Determination**

In his decision, the ALJ found Claimant suffered from the severe impairments of morbid obesity, diabetes mellitus type II, degenerative disc disease, and fibromyalgia. (Tr. 24). The ALJ determined Claimant retained the RFC to perform less than a full range of light work. In so doing, he found Claimant could lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for at least four hours total during an eight hour workday; and sit for at least six hours total during an eight hour workday. She should avoid the use of foot controls. (Tr. 28).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of cashier II, food order clerk, charge account clerk, and clerical mailer. (Tr. 33). As a result, the ALJ found Claimant was not disabled from March 22, 2011 through the date of the decision. Id.

Claimant contends that the ALJ determined certain of her medical conditions to be non-severe but then failed to consider the effects of these conditions in the hypothetical questioning of the vocational expert and in the RFC. In particular, Claimant asserts

5

her depression should have been included as causing some level of limitation in her concentration, persistence, or pace. Claimant also argues that her headaches should have been considered as a medically determinable impairment.

On the issue of Claimant's depression, the ALJ found in his step two analysis that her depression "does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 24). In his subsequent paragraph B analysis, the ALJ determined Claimant had a "mild limitation" in the third functional area of concentration, persistence, or pace. (Tr. 25). Claimant asserts that the ALJ erred by not including such a limitation in the hypothetical questioning of the vocational expert or the RFC.

This Court rejects this notion as it is unsupported by the regulations and the case authority in this Circuit. The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96–8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC

based solely upon the finding at step three is not error. <u>Beasley v. Colvin</u>, 520 Fed. Appx. 748, 754 (10th Cir. 2013).

Moreover, the ALJ repeatedly cited to the medical record to support the proposition that Claimant's mental impairment failed to affect her ability to complete tasks, remember things, concentrate, and follow instructions. The medical record on numerous occasions noted normal memory and judgment and orientation. (Tr. 25). The ALJ also cited to the reports of the reviewing medical consultants, Dr. Burnard Pearce and Dr. Ruth Ann Mertens. These consultants determined Claimant's affective disorder was "non-severe." (Tr. 89, 99). Additionally, Claimant's mental condition was evaluated at the Cherokee Nation Three Rivers Health Center on at least three occasions. The results were largely normal. (Tr. 471, 476, 500). As a result, the ALJ's position at step two that Claimant's mental condition was non-severe was supported by substantial evidence.

Claimant also contends the ALJ improperly determined that her headaches did not constitute a medically determinable impairment. Claimant is correct that she complained of headaches. However, the medical evidence does not support a finding that they constituted an impairment. Claimant received a tomographic evaluation of the brain based upon her complaints. The results were normal and "unremarkable." (Tr. 342). To the extent Claimant received

7

treatment, it was minimal with a notation in the record that Claimant received Excedrin Migraine and acetaminophen. (Tr. 216). Claimant's leap in the conclusion that her "headaches could easily require her to miss work often enough to be unemployable" finds no support in the medical evidence and constitutes the rankest of grave speculation. The ALJ did not err in his conclusion that this condition was not medical determinable.

**Consideration of Medical and Non-Medical Source Evidence**

Claimant contends that the ALJ's reliance upon the opinion of a reviewing consultant identified as Dr. Tom Dees was improper since the POMS code number for this medical professional identified him a psychologist. Dr. Dees ostensibly provided an opinion on Claimant's physical abilities, which Claimant asserts should have been given no weight since he was apparently a mental health professional. Claimant also states that no "Tom Dees, M.D." is registered to practice in Oklahoma. Defendant counters that the coding was an error and that a Tom Dees, M.D. is registered to practice internal medicine in the State of Texas.

Nothing in the regulations requires that a reviewing consultative physician be licensed in a particular state in order to render an opinion. Further, the scrivner's error which Defendant contends accounts for the coding discrepancy is given

8

credence since Dr. Dees electronically signed the report as "Tom Dees, M.D." not "Tom Dees, Ph.D." as would be more likely if he were a psychologist. Moreover, some degree of deference must be given the Social Security Administration's retention of qualified medical consultants. Claimant contention that Dr. Dees is "incompetent to make the evaluation" is rejected.

Claimant also criticizes the ALJ's consideration of the opinion of Dr. Karl K. Boatman, another reviewing consultant. Dr. Boatman found Claimant could occasionally lift/carry 20 pounds and frequently lift/carry ten pounds; stand/walk about six hours in an eight hour workday; sit about six hours in an eight hour workday; and engage in unlimited pushing and pulling except as limited by the restrictions on lifting/carrying. (Tr. 90-91). The ALJ gave "great weight" to the findings regarding the weight limitations and sitting restrictions but gave "little weight" to the findings on pushing and pulling and standing/walking. (Tr. 31). The ALJ concluded Claimant was more limited in these latter areas than opined by Dr. Boatman. The ALJ found Dr. Boatman's opinion was not supported by the objective medical evidence or Dr. Dee's opinion. Id.

Claimant states that the ALJ failed to properly evaluate this opinion evidence and resolve the differences in the opinions of Dr.

9

Dees and Dr. Boatman. It should be pointed out that the ALJ resolved the difference in favor of Claimant by reducing the capability to stand/walk to four hours from Dr. Boatman's opinion of six hours. He concluded that Dr. Dee's opinion was supported by the objective medical evidence, including detailed exam notes. (Tr. 31).

The medical record indicates Claimant suffered from mild facet arthropathy at L4-5 and L5-S1 with an otherwise unremarkable MRI evaluation of the lumbar spine. (Tr. 388). Claimant complained of various conditions such as hip pain, headaches, and back pain but the testing results were unremarkable. (Tr. 340, 342, 344, 346, 348). Claimant did exhibit mild narrowing of the disc space at L2-3 and L3-4 as compared to the height at L1-2. (Tr. 349). She also suffered from calcaneal spurs with degenerative and probable posttraumatic changes with her ankle. (Tr. 350).

The medical records indicate that Claimant told her physician that she did not want to take medication for certain conditions such as her diabetes mellitus or depression. Dr. Brandy O'Neal-Duke stated in her treatment notes that "I asked pt what I could do to help her since she won't do anything that I suggest. States that coming to the dr and hearing her numbers usually motivates her to do better." (Tr. 306). Similarly, with regard to treatment for

generalized arthropathy and inflammation, it was noted "Pt is not very adherent to treatment plans, as everything seems to have unacceptable side effects or cause pain." (Tr. 459). Her treatment for fibromyalgia appeared to significantly help her foot pain. (Tr. 529).

This Court cannot perceive the problem urged by Claimant with the ALJ's conclusion that Dr. Dee's opinion was supported by the objective medical evidence of record which he related in detail in his decision. (Tr. 29-30). Despite concluding that Claimant was not entirely compliant with medical treatment, the ALJ concluded that Claimant was more restricted in her abilities to push/pull and stand/walk. Id.

Claimant appears to contend that the ALJ did not engage in a formulaic examination of the factors set forth in Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). However, many of these factors have very little application to the opinion of a reviewing physician such as length of treatment relationship, nature and extent of treatment relationship, and testing performed. This is precisely the basis for the conclusion that

> it is not necessary for the ALJ to address each factor expressly or at length . . . . As long as the ALJ provides "good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]" . . . What matters is that the decision is "sufficiently specific to make clear to any subsequent

11

reviewer[] that weight the adjudicator gave to the . . . opinion and the reasons for that weight."
Mounts v. Astrue, 479 Fed.Appx. 860, 8665 (10th Cir. 2012) quoting Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ made detailed findings concerning the medical evidence and concluded that the objective medical record supported his decision to give Dr. Dee's opinion "great weight." Support from the medical record is the primary factor in deciding the weight of reviewer's consultative opinions as few of the other factors are germane. No error is found in the ALJ's consideration of the opinion evidence.

Claimant also asserts the ALJ failed to include the "mild" limitations in activities of daily living found in connection with the paragraph B findings. Again, paragraph B findings do not relate directly to the RFC conclusions. *See* Beasley, 520 Fed. Appx. at 754.

Claimant next turns to the opinions of the mental health reviewers, contending the ALJ "never explained how he arrived at a different conclusion regarding Claimant's function than those of his 'experts.'" Dr. Burnard Pearce concluded that Claimant's affective disorder (depression) was non-severe. He recognized from the record that Claimant declined to take medication for the condition, upon examination was fully oriented with normal mood,

affect, memory and judgment, and engaged in relatively normal activities of daily living. (Tr. 89). Dr. Ruth Ann Mertens reached a similar conclusion. (Tr. 99-100).

The ALJ gave these opinions "great weight" as they were consistent with the medical record. He noted Claimant's mood and affect were described as normal in 2012-14. Her depression screening returned with "normal/negative" results. He also found detailed exam notes supported the opinions and that these agency consultants "are experts on the agency's rules and regulations", although this latter finding is of little moment to the validity of the opinions rendered. (Tr. 25-26). Claimant's objection to the ALJ's findings on these experts is odd. He implies that the ALJ reached a different conclusion than the reviewing consultants. He did not. The objection is not meritorious.

**Credibility Determination**

Claimant also contends the ALJ failed to properly assess her credibility. The ALJ recognized that the medical record did not support the level of limitation urged by Claimant as this Court has already discussed, that Claimant was not compliant with recommended treatment also referenced in this Opinion and Order, her activities of daily living, and her attempts to secure work after her alleged onset date. He provided detailed and valid explanations for his

13

conclusions. He concluded that the extent of Claimant's limitations to which she testified were not entirely credible. (Tr. 28-31).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

14

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 12th day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE